**Opinion filed January 20, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00019-CR

_____

**BRANDON EUTAHN HARP, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 259th District Court**

**Jones County, Texas**

**Trial Court Cause No. 011698**

## M E M O R A N D U M   O P I N I O N

The jury convicted Brandon Eutahn Harp of continuous sexual abuse of a young child and assessed his punishment at confinement for forty years in the Institutional Division of the Texas Department of Criminal Justice. Appellant challenges his conviction in two issues. We affirm.

*Background Facts*

The State charged Appellant by indictment with the offense of continuous sexual abuse of a young child. The State alleged that Appellant committed the following:

> . . . did then and there during a period that was 30 or more days in duration, namely from on or about September 1, 2014, through September 1, 2016, when the Defendant was 17 years of age or older, commit two or more acts of sexual abuse against a child younger than 14 years of age, namely, did then and there intentionally and knowingly cause the penetration of the anus of [E.B.], a child who was then and there younger than 14 years of age, by Defendant's sexual organ; and did then and there intentionally and knowingly cause the penetration of the mouth of [E.B.], a child who was then and there younger than 14 years of age, by the Defendant's sexual organ.

On November 8, 2017, E.B. told her elementary school principal, Laurie Florence, that she had been raped by her uncle, Appellant. At the time she made her outcry, E.B. was nine years old and in second grade. E.B. told Florence that Appellant had stuck his penis in her anus and that Appellant told her if she ever told anyone, he would kill her. Florence then took E.B. to her office, where she called the Jones County Sheriff's Office. Deputy Zach Solis responded to Florence's call. Florence also contacted CPS and E.B.'s father, J.B.

Deputy Solis, J.B., and M.W. (J.B.'s mother) then accompanied E.B. to the Abilene Child Advocacy Center (CAC), where Brandon Gurganus interviewed E.B. Following E.B.'s interview with Gurganus, Deputy Solis took E.B. to Hendrick Medical Center in Abilene for a sexual assault examination. The next day, Deputy Solis obtained an arrest warrant for Appellant and executed it without incident. After arresting Appellant, Deputy Solis then interviewed E.B. on November 15, 2017.

During the months leading up to her outcry, E.B. lived at her grandparents' house with her mother, P.H. Before moving in with her grandparents, E.B. and P.H.

lived in several different places with various friends. When E.B. was not living at her grandparents' house, she would still see them about once a week. Appellant is P.H.'s younger brother, and while E.B. was living at her grandparents' house, Appellant was living in a shed behind their house. Appellant was born with neurofibromatosis. This condition caused Appellant to have his leg amputated at the age of sixteen. From then on, Appellant has used a prosthetic leg.

At trial, one of Appellant's main defensive theories was that E.B.'s testimony was coached. This theory spawned from E.B.'s parents' contentious divorce, which had occurred nearly a year before she made her outcry. The divorce decree provided that J.B. and P.H. would be joint managing conservators of E.B. and that P.H. would have the right to designate E.B.'s primary residence. Additionally, the divorce decree provided that J.B. would pay child support. J.B. did not hire a lawyer to represent him during the divorce proceedings.

Throughout the year leading up to E.B.'s outcry, P.H. and J.B. would exchange custody of E.B. at the Abilene Law Enforcement Center. Neither P.H. nor J.B. were very fond of each other. In September 2017, P.H. and J.B.'s ongoing fight over child support and E.B.'s primary residence boiled over and ended with J.B. hiring a lawyer to represent him. J.B., at the time, was around $1,000 behind on his child support obligations and had expressed his dissatisfaction with P.H.'s parenting. At trial, Appellant theorized that J.B. and M.W. coached E.B. to outcry against him to get J.B. out of his child support obligations.

*Analysis*

In his second issue, Appellant challenges the sufficiency of the evidence supporting his conviction. He asserts that "[t]he evidence is insufficient to support a finding that Appellant sexually assaulted E.B. over a period exceeding 30 days." A person commits the offense of continuous sexual abuse of a child if (1) during a

period that is thirty or more days in duration, the person commits two or more acts of sexual abuse, and (2) at the time of the commission of each of the acts of sexual abuse, the actor is seventeen years of age or older and the victim is a child younger than fourteen years of age, regardless of whether the actor knows the age of the victim at the time of the offense. TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2021). "Sexual abuse" means an act that violates one or more penal laws as specified in Section 21.02(c), including aggravated sexual assault. *Id.* § 21.02(c)(4); *see also id.* § 22.021 (West 2019). As noted previously, the indictment alleged that Appellant committed two or more acts of sexual abuse against E.B., to-wit: aggravated sexual assault of a child, during a period of thirty or more days in duration. *See* PENAL § 22.021(1)(B)(i), (ii).

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw

4

reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, appellate courts are not permitted to use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Instead, appellate courts must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

The uncorroborated testimony of a child victim is alone sufficient to support a conviction for a sexual offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2021); *Chapman v. State*, 349 S.W.3d 241, 245 (Tex. App.—Eastland 2011, pet. ref'd); *see also Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (concluding child victim's testimony alone was sufficient to establish element of penetration beyond a reasonable doubt). Furthermore, corroboration of the victim's testimony by medical or physical evidence is not required. *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.); *see Cantu v. State*, 366 S.W.3d 771, 775–76 (Tex. App.—Amarillo 2012, no pet.); *Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206

5

S.W.3d 620 (Tex. Crim. App. 2006). Thus, the testimony of E.B. alone can be sufficient to support a conviction for continuous sexual abuse of a child. *See Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.).

Appellant first contends that the evidence was insufficient to support his conviction beyond a reasonable doubt because the sexual assault examination yielded no evidence of repeated trauma. But as we noted above, medical or physical corroboration testimony is not required in sexual abuse cases involving minors. *See Gonzalez Soto*, 267 S.W.3d at 332. Thus, the lack of any acute or chronic injury to E.B.'s anus was not required for Appellant's conviction. *See id.* In this regard, Appellant's nurse expert, Carrie Edwards, testified on cross-examination that no acute injury is found in 50%–75% of all sexual assault examinations.

Second, Appellant contends that E.B.'s testimony at trial was too vague and contradictory to support Appellant's conviction beyond a reasonable doubt. Appellant is essentially asserting that E.B.'s testimony was unreliable. For example, Appellant contends that E.B. gave different answers as to when the alleged sexual assaults by Appellant began and whether the assaults continued after she made her outcry. Appellant contends that the evidence was such that the jury could only speculate that he committed multiple acts of sexual abuse over a period of thirty or more days in duration.

"[A]lthough the exact dates of the abuse need not be proven, the offense of continuous sexual abuse of a child does require proof that there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration." *Michell v. State*, 381 S.W.3d 554, 561 (Tex. App.—Eastland 2012, no pet.); *see Smith v. State*, 340 S.W.3d 41, 48 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("[T]he offense of continuous sexual abuse of a child does require proof that the last act of sexual abuse occur on at least the 29th day after the day of the first

act."). Appellant asserts that a jury is prohibited from drawing conclusions based on speculation. *See Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 15).

"Speculation is mere theorizing or guessing about the possible meaning of the facts and evidence presented." *Id.* (quoting *Hooper*, 214 S.W.3d at 16). Conversely, "an inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Id.* "Juries are permitted to draw multiple reasonable inferences from the evidence as long as each inference is supported by the evidence presented at trial[.]" *Id.* (citing *Hooper*, 214 S.W.3d at 15). Appellant primarily relies on the fact that E.B.'s trial testimony about when the abuse started was contradictory to what she had said in previous interviews.

At trial, E.B. testified that she thought that Appellant began sexually abusing her when she was five years old and that the abuse continued almost weekly until she was ten years old. During an interview with the CAC, E.B. stated that the abuse began when she was seven years old and continued until she was nine. A week after her interview with the CAC, E.B. stated that the abuse began when she was six years old and continued until she was eight.

As we noted in *Michell*, "[t]he legislature created the offense of continuous sexual assault against young children who are normally unable to identify the exact dates of the offense when there are ongoing acts of sexual abuse." 381 S.W.3d at 561; *see Williams v. State*, 305 S.W.3d 886, 890 n.7 (Tex. App.—Texarkana 2010, no pet.) (citing *Dixon v. State*, 201 S.W.3d 731, 737 (Tex. Crim. App. 2006) (Cochran, J., concurring) ("Perhaps the Texas Legislature can address this conundrum and consider enacting a new penal statute that focuses upon a continuing course of conduct crime—a sexually abusive relationship that is marked by a pattern

7

or course of conduct of various sexual acts.")).  The Texas Court of Criminal Appeals noted in *Villalon* that:

> [There is an] important public policy that we cannot expect the child victims of violent crimes to testify with the same clarity and ability as is expected of mature and capable adults.  To expect such testimonial capabilities of children would be to condone, if not encourage, the searching out of children to be the victims of crimes such as the instant offense in order to evade successful prosecution.

791 S.W.2d at 134.

Even though E.B.'s trial testimony regarding when the abuse started may have been contradicted by her statements in prior interviews, as an appellate court, when there are contradictions in the evidence, we are to assume that the jury resolved the conflict in favor of the verdict.  *See Clayton*, 235 S.W.3d at 778.  Irrespective of when the sexual abuse started, E.B.'s testimony established that acts of sexual abuse committed against her spanned more than thirty days.  Whether E.B.'s abuse started when she was five, six, or seven and lasted until she was either eight, nine, or ten, her testimony clearly established that she was sexually abused more than ten times.  E.B. testified that she was sexually abused almost weekly during the period of abuse.

Even though E.B. was unable to definitively state the exact date of each instance of abuse, she was able to provide consistent detail regarding the abuse.  In both of her interviews and in her testimony, E.B. alleged that Appellant had sexually abused her multiple times.  E.B. testified that each time Appellant abused her, he took off his prosthetic leg.  E.B. stated that each time Appellant abused her, he would first put his penis in her mouth and then put his penis in her anus.  E.B. testified that Appellant would only abuse her when either all occupants of the house were away from the home or were asleep.  Viewed in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found beyond a

reasonable doubt that Appellant committed the offense of continuous sexual abuse as alleged in the indictment. We overrule Appellant's second issue.

In his first issue, Appellant asserts that the trial court erred in denying his motion for mistrial. Appellant's trial counsel made the motion after the trial court received a note from a juror during a recess taken during E.B.'s cross-examination. The note stated as follows: "Ms. Florence said [E.B.] had learning problems and the child mentioned being in a class for dyslexia. I don't see why [Appellant's trial counsel] asked her to read a page from counseling instead of reading it aloud." Appellant contends that the note from the juror demonstrated the juror's bias toward him, thus denying him his right to an impartial jury.

The trial court and the attorneys extensively discussed the note outside the presence of the jury. At the outset, the trial court stated:

> I don't know how many jury trials I've been through. I've never had a juror send me a note questioning how I'm conducting business or what I'm allowing and not allowing. I'm concerned about the prejudice of the undertone of this note, is what I'm concerned about.

In further discussing the note, the trial court stated:

> I've never had a juror send me a note, period, not until they deliberate. I mean, look, she clearly has an issue with the way the young lady was cross-examined about a written document.
>
> . . . .
>
> We're all solid legal minds. Why would they send this note? This isn't asking for a smoke break. It's not asking for a legal definition. It's not asking for an explanation. It's chastising me for allowing [Appellant's trial counsel] to insult this young lady by asking her -- and this jury is pissed off because he asked this young lady to read a document when we all know she's dyslexic and can't read.
>
> . . . .

9

[Appellant's trial counsel's] law license and his freedoms are not at stake. The reality is the person that pays the price for this is his client, who's facing 25 to 99 or life. My point is that. Why -- I mean, this isn't -- if it just asked, Could you ask the witness to speak up, wouldn't bother me. Could you ask her to look at us? Wouldn't . . . bother me. Could you ask [trial counsel] to be a little nicer? That wouldn't bother me. She is taking issue -- she is so emboldened . . . that she thought she needed to pen a note to the Court and make it clear to me that she had issue with that.

After learning what the note said, Appellant's trial counsel moved for a mistrial based on the prejudice that he perceived that it presented to Appellant. The trial court denied Appellant's motion for a mistrial. However, the trial court announced that it would permit Appellant's trial counsel to take remedial measures to address the juror's concern. Trial counsel subsequently advised E.B. that because of evidentiary rules, he is required to hand a document to a witness to read. He further advised E.B. that he was not trying to put her "on the spot" or embarrass her.

A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Young v. State*, 283 SW.3d 854, 878 (Tex. Crim. App. 2009); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). A mistrial is an extreme remedy for a narrow class of highly prejudicial and incurable errors during the trial process. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). "Because it is an extreme remedy, a mistrial should be granted 'only when residual prejudice remains' after less drastic alternatives are explored." *Id.* at 884–85 (quoting *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005)).

A defendant need not request lesser remedies before moving for a mistrial. *Id.* (citing *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004)). However, "when the movant does not first request a lesser remedy, we will not reverse the court's judgment if the problem could have been cured by the less drastic

alternative." *Id.* at 884. Before granting a mistrial, the trial court must consider all of the facts of the particular case. *Id.* The trial court should only grant a motion for mistrial if there is still residual prejudice even after curative measures are taken. *Id.* at 885 (citing *Barnett*, 161 S.W.3d at 134).

We review the denial of a motion for mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). "An appellate court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling." *Ocon*, 284 S.W.3d at 884. A trial court does not abuse its discretion unless its decision falls outside the zone of reasonable disagreement. *Archie*, 221 S.W.3d at 699. "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

A juror must keep an open mind as to a defendant's guilt until all of the evidence is presented. *Quinn v. State*, 958 S.W.2d 395, 403 (Tex. Crim. App. 1997). When a juror makes "statements outside of deliberations that indicate bias or partiality, such bias can constitute jury misconduct that prohibits the defendant from receiving a fair and impartial trial." *Granados v. State*, 85 S.W.3d 217, 235 (Tex. Crim App. 2002) (citing *Quinn*, 958 S.W.2d at 402). Juror disqualification based upon bias is not ordinarily appropriate unless the bias stems from an extrajudicial source. *Quinn*, 958 S.W.2d at 402–03 (analyzing juror disqualification for bias on the same basis as judicial disqualification for bias). In this regard, "it defies common sense and human nature to require that a juror have no impressions or opinions until the judge sends the jury to deliberations. Jurors must necessarily engage in at least some assessment of credibility and evaluation of the evidence as the proceedings occur." *Id.* at 403. Thus, "opinions based upon evidence received in judicial proceedings do not ordinarily raise questions about impartiality." *Id.*

11

Here, the alleged bias concerned an opinion expressed by a juror about the manner in which Appellant's trial counsel questioned the child victim. Thus, the alleged bias did not arise from an extrajudicial source. *See id.* at 402–03. Appellant did not request for the juror making the statement to be questioned to determine if he or she was biased against Appellant because of the expressed opinion, or if he or she had shared that opinion with other jurors. *See Ocon*, 284 S.W.3d at 886 (the questioning of a juror to determine misconduct should be at the behest of the party seeking relief). "Ultimately, when a sitting juror expresses bias against the accused, the trial court must determine whether the juror can set aside that bias and remain fair and impartial." *State v. Hernandez*, 363 S.W.3d 745, 751–52 (Tex. App.—Austin 2011, pet. ref'd) (citing *Granados*, 85 S.W.3d at 235–36; *Quinn*, 958 S.W.2d at 403). That inquiry simply did not occur. Furthermore, Appellant did not request the removal of the juror that expressed the opinion. These would have been less drastic remedies than a mistrial. *See Ocon*, 284 S.W.3d at 884–85.

The trial court did not abuse its discretion by denying Appellant's motion for mistrial. The record does not indicate that the juror's opinion about the method used by Appellant's trial counsel to question E.B. would ultimately affect the juror's ability to render a verdict based upon the evidence offered at trial. Additionally, the trial court permitted Appellant's trial counsel to offer an explanation to cure any prejudice. Specifically, the trial court announced as follows:

> I'm going to allow great latitude, [Appellant's trial counsel]. . . . [I]f you want to fabricate a reason to approach the young lady and ask her a question on something and be apologetic to her and say, Ma'am, I'm sorry I'm asking you to read this, but the rules of law require that I do it this way, if you would like to backdoor that, you're free to do that. Or if you want to just leave it alone, that's up to you. But you are free to somehow address the issue artfully through your expertise, if you would like to do so.

As we noted previously, Appellant's trial counsel took advantage of this opportunity upon the jury's return to the courtroom. We conclude that this approach taken by the trial court and Appellant's trial counsel was sufficient to address the juror's concern about the manner in which trial counsel questioned E.B. Accordingly, we overrule Appellant's first issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


January 20, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.